Steven M. Zadravecz (State Bar No. 185676)
szadravecz@jonesday.com
Luke W. Holladay (State Bar No. 319134)
lholladay@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: 949.851.3939
Facsimile: 949.553.7539

Attorneys for Plaintiff NOVANTA CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVANTA CORPORATION, a Michigan Corporation,<br><br>             Plaintiff,<br><br>        v.<br><br>JADUNANDAN THAMOTHARAN, an individual; RADIANT VISION SYSTEMS, LLC, a Delaware limited liability company; and DOES 1 through 50.<br><br>             Defendants. | **Case No.**   2:18-cv-2036<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**(1) BREACH OF CONTRACT; (2) MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE §§ 3426 *ET SEQ.*); (3) MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1831 *ET SEQ.*); (4) BREACH OF DUTY OF LOYALTY; (5) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (6) INTENTIONAL INTERFERENCE WITH CONTRACT; (7) STATUTORY UNFAIR COMPETITION; AND (8) CONVERSION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Novanta Corporation (sometimes referred to as "the Company" in this Complaint) is a global leader and supplier of laser products, precision motion, and vision technologies to original equipment manufacturers in a variety of industries.

Through a division called "Photo Research", Novanta sells products that are used to measure the color and characteristics of light, such as spectrometers and spectroradiometers (generally and collectively referred to as "Spectrometers" in this Complaint), as well as related systems, services, software and accessories.  Novanta's Spectrometers and related products and services are used in a number of industries, including electronics, medical devices, aerospace, and entertainment.  Much of Novanta's success in the Spectrometer space is attributable to the strong customer relationships that it developed through substantial investments of time and money, as well as its reputation in the industry for providing quality products, systems and services at a competitive price.  Novanta's Spectrometers and related services fill an integral need of many customers who require devices to measure and evaluate the quality of light or color displayed on their end-use products and to calibrate and verify digital projectors and post production displays.

2.     During the operative times mentioned in this Complaint, Defendant Jadunandan Thamotharan ("Thamotharan") was employed by Novanta as the Director of Global Sales for the Photo Research division, which specialized in selling Spectrometers and related products and services.[1]  In this role, Thamotharan was responsible for all sales activity of the entire division.  Those responsibilities included developing a strategic analysis of customer needs and potential sales opportunities; developing and executing on plans of operation; maintaining and monitoring the profits and losses associated with the division's business; maintaining relationships with existing customers; developing leads and new customers; and overseeing the

---

[1] Thamotharan originally started his employment with a stand-alone company named Photo Research, Inc. ("PRI"), which was once a wholly-owned subsidiary of Excel Technologies, Inc.  In 2008, GSI Group, Inc. ("GSI") acquired PRI when it purchased Excel Technologies, Inc. and was assigned all of the rights, duties and obligations owned by both PRI and Excel Technologies.  Later, a subsidiary of GSI and PRI merged, and PRI ceased to be a stand-alone company.  PRI's spectrometer business was then absorbed into GSI, and was referred to as the "Photo Research division" or the "PRI" business.  Over the last few years, the Photo Research division has been positioned within various different business units under GSI and GSI-owned subsidiaries, including JADAK LLC.  In 2016, GSI changed its name to Novanta Inc. The Plaintiff, Novanta Corporation, is a wholly owned subsidiary of Novanta Inc.

entire sales force and function of the Photo Research division, including a number of other employees working in the sales department.  During his employment, Thamotharan had access to some of Novanta's most valuable trade secrets and confidential and proprietary information, including detailed, non-public information about customers, such as customer needs and historical purchasing trends, historical and on-going bidding and quotes on product and systems, information about when customers would be in the market to purchase Spectrometers and related accessories and services, customer pricing, strategic selling objectives, profit margin information, and leads generated by Novanta on new customers and prospects.  Thamotharan also had access to non-public information about the business operations of the Photo Research division, including the profits and losses associated with the business, cost of goods sold, manufacturing lead times, and non-public design and manufacturing specifications related to Novanta's Spectrometers.

3.     Novanta recently discovered that, surrounding the time he announced his voluntary resignation, including on his last day of work, Thamotharan downloaded, copied and then absconded with Novanta's most valuable trade secrets, as well as other confidential and proprietary information.  The information that Thamotharan misappropriated included a comprehensive compilation of recent customer quotes supplying details about how Novanta prices and packages its products and systems, customer-specific product pricing, historical purchasing trends, and details on a customer-by-customer basis of purchases and pricing, pricing strategies and formulas, inventory and warehousing strategies, non-public information about sales margins, non-public information about prospective customers and the stage of sales information, sales and revenue forecasts, information about when customers would be in the market to purchase Spectrometers and related accessories and services, profit and loss data associated with the Photo Research division, manufacturing lead times, and non-public design and manufacturing specifications related to Novanta's Spectrometers.

4.      Novanta is further informed and believes that, while Thamotharan was still employed with Novanta, he was solicited by defendant Radiant Vision Systems, LLC ("Radiant") or affirmatively sought out employment at Radiant, Novanta's direct competitor (collectively with Thamotharan, "Defendants"); that he negotiated alternative employment with Radiant; that shortly after his resignation from Novanta, Thamotharan began working with Radiant; and that Radiant and Thamotharan are now using trade secrets, as well as the other confidential and proprietary information that Thamotharan stole to unlawfully compete against Novanta.

5.      Novanta brings this action because Defendants have engaged in a pattern of unfair competition ranging from the theft, disclosure and use of Novanta's most confidential information to using deception and unfair practices to interrupt Novanta's economic relationships with its customers.  Novanta is informed and believes that the immediate effect of Defendants' use of its highly sensitive information and Defendants' other misconduct, as described in this Complaint, has caused, and will continue to cause, Novanta irreparable harm and significant economic loss.

6.      Novanta files this action against Defendants to enjoin their continued use of Novanta's trade secrets and other confidential and proprietary information, to secure the immediate return of information and property that belongs to Novanta, and to hold Defendants accountable for the substantial damage they have caused through their unlawful acts.

## **THE PARTIES**

7.      Novanta is a corporation organized and existing under the laws of the State of Michigan, with its corporate headquarters and principal place of business located in Bedford, Massachusetts.  Novanta is qualified to do business in the State of California.

8.      Novanta alleges on information and belief that, at all times relevant to this Complaint, Thamotharan was a resident of the State of California.  During the

1    operative times mentioned in this Complaint, and up to August 30, 2017, Thamotharan

2    was a full-time employee of Novanta, or a wholly-owned Novanta subsidiary.

3        9.    Novanta alleges on information and belief that Radiant Vision Systems,

4    LLC is a Delaware limited liability company, with its principal place of business in

5    Redmond, Washington, and that Radiant conducts operations in California and is

6    Thamotharan's current employer.  Novanta alleges on information and belief that

7    Radiant hired Thamotharan, who is now performing duties for Radiant that are

8    virtually identical to the duties that Thamotharan performed for Novanta, including

9    calling on the very same customers that Thamotharan serviced while employed at

10   Novanta.

11       10.   Novanta sues Defendants DOES 1 through 50 under fictitious names.

12   Their true names and capacities, whether individual, corporate, associate, or otherwise,

13   are unknown to Novanta.  When Novanta ascertains their true names and capacities, it

14   will seek permission from this Court to amend this Complaint to insert the true name

15   and capacity of each fictitiously named Defendant.  On information and belief,

16   Novanta alleges that each fictitiously named Defendant is legally responsible in some

17   manner for the occurrences alleged in this Complaint, and that those Defendants

18   directly and proximately caused injury to Novanta.

19       11.   On information and belief, at all times relevant to this Complaint,

20   "Defendants" (which collectively refers to Thamotharan, Radiant, and DOES 1-50),

21   and each of them, were the agents, servants, employees, alter egos, successors-in-

22   interest, subsidiaries, affiliated companies or corporations, and joint ventures of the

23   other Defendants, and were, as such, acting within the course, scope, and authority of

24   each other Defendant.  Novanta further alleges on information and belief that each of

25   the Defendants acted in concert with, and with the consent of, each of the other

26   Defendants, and that each of the Defendants ratified or agreed to accept the benefits of

27   the conduct of each of the Defendants.

28

## JURISDICTION & VENUE

12.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) because at least one of the claims brought by Novanta is based on the laws of the United States and because 28 U.S.C. § 1367(a) permits supplemental jurisdiction over Novanta's state law claims.   This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity) because Novanta and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.

13.     California has the most significant contacts with the subject matter of this case.  Venue is appropriate in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because, on information and belief, defendant Thamotharan lives in Los Angeles County and defendant Radiant is actively doing business in Los Angeles County.  Venue is also appropriate in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions at issue occurred in Los Angeles County.

## FACTUAL ALLEGATIONS

**A.     Novanta's Business And The Company's Confidential Information.**

14.     At all relevant times mentioned in this Complaint, Novanta has been an industry leader in the business of producing and selling high precision, state of the art light and color measurement technology, as well as related systems, services, software and accessories.  Novanta is an industry leader thanks to the unique product and system it offers, and the strong customer relationships it has developed over time and at substantial expense.  Novanta's longstanding presence in the Spectrometer market has allowed it to acquire the information necessary to understand the broad range of customers and unique customer needs in the light and color measurement technology market.

15.     In the course of building and maintaining relationships with its customers, Novanta has acquired distinct, unique and non-public information about the particular attributes of each customer with which it does business and with which it has had

communications, including the type of business conducted by the customer and their particular needs for certain Spectrometer products, accessories, systems, and related services; current and historical pricing information related to customer purchasing habits and trends; data regarding the margins Novanta makes on product sales; contact information for individuals at the customer's business who are in a position to make decisions about the customer's business; and projections of future product purchases by the same customer and other prospective customers in a number of industries. There are no publicly available lists of, and no publicly available means to obtain, customer information containing the detailed information Novanta collects and uses in its business operations.

16.    Similarly, through significant effort and expense, Novanta has developed confidential pricing strategies and system specifications to help it negotiate contracts with its customers.  Novanta's pricing strategies are built upon an individual assessment of each customer, and an understanding of the broader system needs of that customer.  Over the years, Novanta's confidential pricing strategies have allowed it to become highly proficient at obtaining customers by offering its products at competitive prices and packaging its products with other accessories and services, thus giving Novanta a competitive edge over other companies in the Spectrometer space.

17.    Through significant effort and expense, Novanta has developed detailed manufacturing specifications, designs, and drawings that allow it to manufacture Spectrometers.  These specifications, designs, and drawings are not generally known and cannot be ascertained from public sources.

18.    In addition, Novanta, through its other business operations, affirmatively mines for new customers, and provides "qualified customer" leads to employees for follow up.  The information that Novanta and its employees develop about these qualified customer leads are not generally known to the public, and includes information such as the particular needs of the customer, the customer's time line for potential purchase, the volume of products the customer is interested in purchasing,

and the related services and accessories that the customer might be interested in purchasing.

19.    The identification of customers; specific needs of customers; current and historical pricing information and volume of sales related to customer purchases of Novanta products; Novanta's margins on product sales; market forecasts as well as projections related to existing and prospective customers; detailed operational information about the Photo Research division; and product specifications, designs, and drawings, as well as the other non-public information identified in paragraphs 2-3 and 15-18 of this Complaint, constitute trade secrets and confidential and proprietary information that is not available to the public and cannot be easily ascertained or developed, especially in the industries in which Novanta sells its products.  Novanta's trade secrets and its confidential and proprietary information give it an edge over its competitors and derive value because they are kept secret.

**B.    Novanta Takes The Steps Necessary To Protect Its Trade Secrets And Confidential Information.**

20.    Novanta takes steps to protect the secrecy of its trade secrets and other confidential and proprietary information.  In this regard, Novanta uses a variety of controls to regulate access to its hard copy and electronically stored data to protect the security and confidentiality of its sensitive information.  Among other things, Novanta requires all employees to sign a confidentiality agreement, and it has enacted and enforces policies and procedures designed to protect the Company's confidential and proprietary information.

21.    For example, all employees who are given access to Novanta's trade secrets and other confidential and proprietary information are required to execute an Employee Patent and Proprietary Information Utilization and Non-Solicitation Agreement ("Proprietary Information Agreement") which contains provisions protecting Novanta's information.  The Proprietary Information Agreement generally provides that employees will hold all confidential, proprietary, and trade secret

information of the Company in strict confidence and will neither use nor disclose information belonging to Novanta to third parties.  The agreement further requires employees to return Novanta's information and property to the Company at the end of their employment.  The Proprietary Information Agreement used by Novanta specifically identifies certain information as confidential or a trade secret, including product designs and specifications, prices and pricing formulae, cost and other financial information, customers' special materials and product specifications and requirements, sales records, sales reports, customer lists, customer contact reports, customer records, market analyses, and marketing and business plans, among other items.

22.     Moreover, Novanta does not provide access to its sensitive and detailed information to all employees.  Instead, the Company limits access only to those persons in management or persons that require this information to perform their duties. To the extent individuals require certain confidential information to perform their duties, the Company provides only the set of information that the individual requires (as opposed to a complete customer list for all aspects of Novanta's business, for example).  Novanta prohibits its employees from using or disclosing its trade secrets or its other confidential and proprietary information to third parties, and requires the return of such information to the Company upon the termination of employment.

23.     In addition to these steps, Novanta also publishes and enforces a variety of policies, including its Code of Ethics, which are designed to protect its trade secrets and other confidential and proprietary information.  Through its policies, Novanta prohibits employees from sharing trade secrets or other confidential or proprietary information with third parties, and further prohibits employees from discussing trade secrets and other confidential or proprietary information with other employees when third parties are present.

**C.     Thamotharan Had Access To Novanta's Trade Secrets And Confidential Information And Agreed To Never Use Nor Disclose That Information.**

24.     Throughout the course of his employment at Novanta, Thamotharan signed a number of documents confirming that he was to keep Novanta's information confidential, and prohibiting him from using or retaining Novanta's information after his employment.   For instance, on various dates, including January 13, 2012 and September 21, 2015, Thamotharan acknowledged receiving and agreed to abide by the Company's Code of Ethics.

25.     Additionally, Thamotharan signed a number of agreements governing Novanta's trade secrets and other confidential and proprietary information.  For example, on December 31, 2014, Thamotharan executed the latest of his Proprietary Information Agreements.  Among other things, the Proprietary Information Agreement required Thamotharan to keep Novanta's trade secrets and its other confidential and proprietary information a secret, prohibited him from using such information except in the performance of his duties for the Company, and demanded that Thamotharan take all necessary steps to keep the Company's information a secret, including after his employment ended.  The steps Thamotharan was required by the Proprietary Information Agreement to take to keep Novanta's information a secret included not copying or removing any such information from the Company premises except in the pursuit of the business of the Company.

26.     Additionally, Thamotharan's Proprietary Information Agreement required him to return all property, including emails and electronic documents, prepared by him in the course of employment, along with all confidential and proprietary information belonging to Novanta at any time requested by the Company and upon the termination of his employment.

27.     Under Section 7 of the Proprietary Information Agreement, Thamotharan also acknowledged that he owed a duty of loyalty to the Company.  In keeping with this duty, Thamotharan agreed that, while employed, he would devote his full time, attention, skill, and effort to his duties for the Company and he would not engage, directly or indirectly, in activities that could reasonably result in competition with the

1  Company. Thamotharan agreed to similar obligations when he routinely signed for and

2  agreed to comply with the Code of Ethics which, among other things, prohibited him

3  from engaging in activities that competed with Novanta.

4          28.     Thamotharan served as the Director of Global Sales for the Photo

5  Research division for more than one and a half years, until his last day of work on,

6  August 30, 2017.  In his role as the Director of  Global Sales, and in his prior roles

7  with the Photo Research division as a sales leader, Thamotharan was responsible for,

8  among other things, seeking out and marketing to potential customers who the

9  Company identified as in need of Novanta's products; maintaining relationships with

10 Novanta's existing customers; providing competitive pricing to existing customers, as

11 well as predicting the needs of those customers; preserving relationships with

12 customers; developing strategic plans to increase Novanta's market share and

13 penetration; and using best efforts to obtain customer-specific information to facilitate

14 quotes and bids.  Thamotharan's role frequently called on him to travel to Novanta's

15 customers' places of business and trade shows where he would act as Novanta's

16 representative.  He also was responsible for developing sales strategies based on his

17 assessment of companies' upcoming needs for Novanta's products.  Additionally,

18 Thamotharan oversaw at least one sales employee in the division.  In his role as

19 Director of Global Sales, and as a leader in the division, Thamotharan had significant

20 input on the strategic direction, policies, protocols and operations of the Photo

21 Research division of the Company, including making hiring and firing decision, as

22 well as policy decisions on how to advance the objectives of the Photo Research

23 division.

24         29.     Thamotharan had access to Novanta's highly coveted and private trade

25 secrets, such as sales reports and forecasts, detailed product information, non-public

26 information about the Company's customers, including the purchasing habits of those

27 customers, strategic business plans and marketing proposals, sales analysis, profit

28 margins, historic and current sales data; customer pricing and data sheets; market

forecasts; projections of specific customer purchases and details about the designs and specifications of Novanta's Spectrometer products.  Thamotharan also had access to detailed, non-public and trade secret information about the Photo Research division, including operations details such as the division's profit and loss, cost of goods sold, manufacturing lead times, capacities, and the weaknesses of the Photo Research division's business model, products, and systems.  Moreover, Thamotharan had access to Novanta's confidential and proprietary information, such as particularized marketing proposals that were custom made for customers, individual customer quotes, internal competitive analysis, inventory capacity information, and customer contact data and details.

30.    Novanta shared these trade secrets and other confidential and proprietary information with Thamotharan by, among other things, sending him electronic and hard-copy documents, and giving him access to the Company's material stored on the Company's network and available through his Company computer.  Thamotharan also had frequent contact with customers that purchased products from Novanta, and became intimately familiar with each customers' unique preferences, purchasing history and related, non-public information.

**D.    Thamotharan Breached His Duties To The Company By Taking Trade Secrets And Confidential Information For Competitive Use While Still An Employee Of The Company.**

31.    On August 28, 2017, Thamotharan notified Novanta that he was going to resign.  He provided two weeks of notice.  Given the suddenness of Thamotharan's resignation, Novanta asked if Thamotharan would consider continuing in his current position through the end of 2017.  He said no.  When Novanta asked Thamotharan if he was leaving for another job, Thamotharan refused to provide a substantive response.

32.    On August 29, 2017, Thamotharan took part in an exit interview where he again declined to answer whether he had a job at a competitor despite being asked several times.  During the exit interview, Thamotharan was given a copy of the

Proprietary Information Agreement and was reminded of his obligation to maintain the confidentiality of Novanta's information.  In addition, during the exit interview, Thamotharan was instructed to return all of his Company equipment, such as his company laptop, printer, and cell phone on this last day of work.  Thamotharan was specifically told multiple times that, on his last day of work, he would be required to return all of Novanta's trade secrets, as well as all confidential and proprietary material and information.

33.     Given Thamotharan's less than forthright attitude, and the concern of the Company that he was going to a competitor and would not act in Novanta's best interest during his notice period, Novanta decided to advance Thamotharan's separation date to August 30, 2017.  On that same day, Novanta disabled Thamotharan's access to all Company systems, collected the property he presented, and sent him a letter reminding him of his obligations under the Proprietary Information Agreement.  Novanta's August 30, 2017 letter specifically requested that Thamotharan provide the Company with written confirmation that he would honor the terms and conditions his Proprietary Information Agreement.  Thamotharan never responded to the letter.

34.     Because Thamotharan was not responsive to Novanta's questions regarding his new employer and refusal to confirm that he would comply with his contractual obligations, Novanta began to investigate Thamotharan's pre-departure conduct to see if he had engaged in any inappropriate conduct.  As discussed below, Novanta's investigation revealed numerous instances of misconduct.

35.     For example, as part of its investigation, Novanta retained a forensic consultant to analyze Thamotharan's work computer.  Novanta's preliminary evaluation of the work computer revealed that, in the months leading up to Thamotharan's resignation, he appeared to have engaged in a pattern of conduct consistent with an intentional plan to steal the Company's valuable trade secrets and other confidential and proprietary information.  For instance, Novanta's forensic

consultant discovered that, after Thamotharan had likely already started searching for a job and preparing his resume, Thamotharan connected numerous portable storage devices (commonly referred to as thumb drives) to his Company computer on various different dates, including repeated plug-ins from July 12, 2017 through August 28, 2017, the date of Thamotharan's resignation.  The forensic examination also revealed that Thamotharan appeared to use the thumb drives to download, backup, or copy a significant amount of vital Company information from his work computer, including some of Novanta's trade secrets and other confidential and proprietary information. That information included detailed, current and historical sales and pricing information for all relevant customers; Novanta's profit and loss statements; margin data related to product sales; market forecasts; projections of specific customer purchases; and strategic business plans and marketing material.  Since Novanta maintained all such information directly on its network systems, to which Thamotharan had ready access while he was employed, there was no legitimate business need for him to backup, download, or copy such key Novanta information to a personal thumb drive.  On information and belief, Thamotharan never informed any employee of Novanta that he backed up, downloaded or copied Novanta's business records to a thumb drive, nor did Thamotharan seek permission to engage in such activities.

36.     The forensic analysis also revealed that Thamotharan installed and executed on his Novanta computer a program called BleachBit.  BleachBit is a data destruction software used to wipe relevant data from a computer that makes a forensic evaluation of such a computer more difficult.  Thamotharan was not authorized to install or execute this program on his Company computer.  On information and belief, Thamotharan's decision to use BleachBit to delete data before his resignation indicates that he not only stole the Company's information, but also attempted to erase the history of his actions so the Company would not be able to trace his misconduct.

37.     Additionally, the Company investigated the sales patterns related to the Photo Research division, and particularly, Thamotharan's conduct relative to qualified

customer leads.  Based on this investigation, the Company came to the conclusion that Thamotharan was not following up, and inputting qualified customer leads into the Company's tracking data base – qualified customer leads that were sent directly and only to Thamotharan for processing and follow up.  By way of this activity, Thamotharan prevented the Company from tracking progress with prospective customers, or even identifying certain qualified customer leads.  Novanta alleges on information and belief that Thamotharan intentionally withheld such data so that he could divert these qualified leads to Radiant, and generate new business from Novanta's qualified customer lead when he started at Radiant.

38.     After Novanta's preliminary investigation, Novanta retained counsel to communicate directly with Thamotharan about its preliminary findings and to obtain the immediate return of its information.  Thereafter, Thamotharan retained counsel who, on his behalf, informed Novanta that he did not intentionally withhold the return of any Novanta documentation and, to the extent any Novanta material was not returned, such actions were solely "inadvertent."

**E.     Additional Investigation Confirmed That Thamotharan Intentionally Took And Refused To Return Critical Trade Secret Documents Belonging To Novanta.**

39.     In December 2017, counsel for Novanta and Thamotharan agreed to a "review protocol" by which Novanta was supposed to be given access to the various thumb drives and computers maintained by Thamotharan, and on which Novanta material was stored.  The purpose of the review protocol was to identify what Novanta information Thamotharan retained, to secure the return of that information, and to determine what Thamotharan had done with Novanta information after his last day of work for the Company.  Although the review process was agreed to in December 2017, Novanta was not permitted meaningful access to any of the devices that Thamotharan retained until mid to late February 2018.

40.    In mid-February 2018, Novanta was permitted limited access to just four of the thumb drives that Thamotharan had in his possession.  After a review of one of those thumb drives, the Company was able to confirm much of what it found through its own preliminary investigation.  In this regard, an assessment of one of Thamotharan's thumb drives revealed that he did, in fact, download the entirety of his Novanta working files from his Novanta computer to a personal thumb drive that he took with him after his last day of work; a drive that he refused to voluntarily return to the Company.  The files that Thamotharan downloaded to this personal thumb drive included all the critical business records that a competitor would need to target and identify Novanta's existing and prospective customers, understand Novanta's business and sales strategies, and undercut Novanta's pricing.  In particular, a review of Thamotharan's personal thumb drive confirmed that he downloaded, among other things, a comprehensive compilation of recent customer quotes supplying detailed information about how Novanta prices and packages its products and systems, customer-specific product pricing, historical purchasing trends and details on a customer-by-customer basis, pricing strategies and formulas, inventory and warehousing strategies, non-public information about sales margins, non-public information about prospective customers and stage of sales information, sales and revenue forecasts, information about when customers would be in the market to purchase Spectrometers and related accessories and services, profit and loss data associated with the Photo Research division, manufacturing lead times, and non-public design and manufacturing specifications related to Novanta's Spectrometers.

41.    In addition to these trade secrets, Thamotharan also downloaded from his Novanta computer to his personal thumb drive a number of Novanta's confidential and proprietary documents, such as particularized marketing proposals that were custom made for customers, individual customer quotes, internal competitive analysis, inventory capacity information, and customer contact data and details.

42.     Moreover, the review of one of Thamotharan's personal thumb drives revealed metadata reflecting that, on August 30, 2017 – the last day of his employment – Thamotharan took intentional actions to access, copy to, or copy from the thumb drive Novanta's trade secrets and other confidential and property materials, including the materials described in paragraphs 39 and 40 above.  Moreover, the metadata revealed that Thamotharan took similar actions on August 15, 2017, a date after which Novanta is informed and believes that Thamotharan had made a decision to leave the Company and join Radiant.  The actions reflected in the metadata of Thamotharan's thumb drives are consistent with the mass copying of Novanta business records, including business records that would give Thamotharan a competitive advantage at his new employer.   This information demonstrated that the representations made by Thamotharan about innocent retention of materials was a fabrication.

43.     As of the date this Complaint is filed, Thamotharan has not complied with the review process originally agreed to by the Parties.  Namely, he has not provided Novanta with access to his computers and other devices, and has not confirmed that all devices and mediums on which Novanta information was stored has been presented for inspection or even sequestered.  Indeed, although Thamotharan was required to deliver all thumb drives that he used in connection with his Novanta computer, he failed to do so.  Thamotharan has never explained why he failed to deliver for examination at least two personal thumb drives that he connected to his Novanta computer, and on which Novanta data is likely to reside.

44.     Novanta alleges on information and belief that, based on the conduct detailed above regarding the review process, Thamotharan has intentionally engaged in delay tactics to obfuscate his misconduct and conceal his further and continued possession of Novanta property and information.  Further, Novanta alleges on information and belief that Thamotharan has intentionally failed to timely comply with the review protocol to prevent a full and complete evaluation of his misconduct and to conceal his continuing use of Novanta's trade secrets and other confidential and

proprietary information. Novanta alleges on information and belief that Radiant has encouraged, condoned and directed this conduct by Thamotharan.

45.     The trade secrets and other confidential and proprietary information taken by Defendants enables them to unfairly compete in the marketplace.  The information misappropriated from Novanta permits Defendants to specifically identify and target Novanta's customers, undermine Novanta's pricing, evaluate and undercut Novanta's profit margin, and thus, unfairly compete. Moreover, Defendants do not need to spend any time or resources identifying key and high-volume customers or learning their unique needs and preferences, or developing with their own endeavors the trade secrets and other information Novanta diligently worked to amass.

**E.     After Resigning, Thamotharan Effectuated His Plan To Unfairly Compete With Novanta By Accepting A Job At Radiant.**

46.     Despite Thamotharan's repeated statements that he did not have a job offer when he left Novanta, the Company recently discovered that, after his resignation, he began working at Radiant, a significant competitor of Novanta in the color and light measurement market.  Novanta is informed and believes that, before his resignation, Thamotharan already had secured a job at Radiant.  Novanta is also informed and believes that Thamotharan performs a role at Radiant that is substantially similar, if not identical, to the role he previously performed at Novanta.  Novanta is additionally informed and believes that Thamotharan is currently and actively calling on the same customers he served at Novanta, soliciting those customers, and trying to displace Novanta as the provider of choice for Spectrometers and related products and services.  Taken together, and individually, the trade secrets and other confidential and proprietary information misappropriated by Thamotharan provides him and Radiant with all the information necessary to maintain and enhance a competing business and to interfere with Novanta's customer relationships.  Similarly, the inappropriate actions that Thamotharan took to abscond with qualified customer leads and his failure to

1  insert qualified customer lead information into the Company's data base has provided
2  Thamotharan and his new employer with an additional and unfair leg up.

3      47.     Novanta is informed and believes and on that basis alleges that
4  Thamotharan and Radiant have used and are continuing to use Novanta's trade secrets
5  and other confidential and proprietary information to interfere with and interrupt
6  Novanta's economic relationships with its customers and prospective customers
7  without, among other things, spending the money and time associated with identifying
8  those customers and determining their unique needs and specific preferences.
9  Novanta's customers have been entertaining Defendants' solicitations and have or will
10 be placing orders with Radiant.

11     48.     Defendants have continued to engage in unfair competition by using
12 Novanta's trade secrets and other confidential and proprietary information. With the
13 stash of Novanta's sensitive information available, Defendants remain in a position to
14 precisely identify which customers to target, which products to offer, and which prices
15 to undercut.

16                     **<u>FIRST CLAIM FOR RELIEF</u>**
17              **(Breach of Contract, Against Thamotharan Only)**

18     49.     Novanta hereby incorporates by reference paragraphs 1 through 48 above.
19     50.     Thamotharan and Novanta entered into valid and binding contracts,
20 including the Proprietary Information Agreement referred to in this Complaint.  The
21 agreement between Thomatharan and Novanta prohibited Thomatharan from, among
22 other things, using or disclosing any of Novanta's confidential or proprietary
23 information.  The agreement also prohibited Thomatharan from copying or removing
24 Novanta's information from the Company's premises, except in the legitimate pursuit
25 of the Company's business.  The Proprietary Information Agreement further required
26 Thomatharan to return all property, including emails and electronic documents,
27 prepared by him in the course of employment, along with all proprietary information

28

1  belonging to Novanta, on the last day of his employment.  Finally, the agreement
2  required Thomatharan to act in the best interests of Novanta during his employment.

3      51.    Thamotharan agreed to the terms of the Proprietary Information
4  Agreement with Novanta in exchange for good and valuable consideration, including
5  his employment and continued employment at Novanta, the compensation paid to him
6  in connection with his employment, and his exposure to the Company's proprietary
7  information and valuable customer relationships.

8      52.    Novanta performed all of the material obligations it owed to Thamotharan
9  under the Proprietary Information Agreement.

10     53.    By engaging in the actions alleged in this Complaint, Thamotharan has
11 breached his contractual obligations to Novanta.

12     54.    Thamotharan's wrongful conduct has caused serious harm and damages
13 and continues to cause harm and damages to Novanta in an amount that is not
14 presently ascertainable, but will be established at trial.

15     55.    Novanta is informed and believes that Thamotharan will continue to
16 breach his agreement with Novanta and Novanta will be irreparably harmed thereby
17 unless such activities are enjoined by this Court.

18              **<u>SECOND CLAIM FOR RELIEF</u>**

19 **(Misappropriation of Trade Secrets, Civil Code Section 3426, *et al*., Against All**
20                          **Defendants)**

21     56.    Novanta realleges and incorporates by reference paragraphs 1 through 48
22 above.

23     57.    Novanta's trade secrets consists of, among other things, the identification
24 of particular customers; types of business and needs of customers; pricing information
25 related to customer purchases of Novanta's products, and particularly comprehensive
26 compilations of customer pricing historically and over the span of various industries; a
27 compilation of recent customer quotes supplying details about how Novanta prices and
28 packages its products and systems; customer-specific product pricing; historical

purchasing trends and customer purchase and pricing details on a customer-by-customer basis; sales analytics for the Photo Research division; pricing strategies and formulas; inventory and warehousing strategies; non-public information about sales margins; non-public information about prospective customers and stage of sales information, including information about when customers would be in the market to purchase Spectrometers and related accessories and services; sales, revenue and operating forecasts; profit and loss details associated with the Photo Research division; manufacturing lead times; non-public design and manufacturing specifications related to Novanta's Spectrometers; and strategic business plans.  This information and material qualifies as trade secret pursuant to California Civil Code section 3426, *et seq*.

58.    The information identified above and in this Complaint has economic value because it is not generally known to Novanta's competitors or potential competitors, and it is not known in the industry.  Novanta has developed these trade secrets over time and through substantial expenditure of resources, and Novanta has obtained a competitive advantage from these trade secrets.

59.    Novanta has taken reasonable steps to maintain the secrecy of its trade secrets by, among other things, requiring employees to execute agreements with a proprietary information provision; publishing and enforcing policies that prohibit the unauthorized copying, use or disclosure of Company trade secrets; enacting policies that limit the use of Company computers to business purposes and prohibiting employees from transferring confidential Company business records to home computers; only permitting access to sensitive Company information on a need to have basis; and limiting disclosure of Company information where an employee requires such information for purposes of carrying out his or her job duties.

60.    Thamotharan became aware of Novanta's trade secrets only by virtue of his employment with the Company.

61.    On information and belief, Defendants misappropriated Novanta's trade secrets by improper means, including by taking the actions alleged in this Complaint.

Those actions include, among other things, acquiring Novanta's trade secrets by improper means, as well as disclosing and using Novanta's trade secrets without authorization as described in this Complaint.

62.    On information and belief, Defendants wrongfully acquired, disclosed, and/or used Novanta's trade secret information without authorization, including as detailed in the allegations in this Complaint.  Novanta alleges on information and belief that Thamotharan, on behalf of and to benefit his new employer, Radiant, continues to disclose and use Novanta's trade secrets to unlawfully compete.

63.    On information and belief, Radiant has ratified the conduct of Thamotharan as detailed in this Complaint, including accepting the benefits of Thamotharan's use of Novanta's misappropriated trade secrets, and not taking adequate or prompt action to prevent the further use of Novanta's misappropriated trade secrets.

64.    By reason of Defendants' acts as alleged in this Complaint, Novanta has and will suffer damages to its business and the loss of profits the Company would have made but for Defendants' acts.

65.    Defendants' misappropriation of Novanta's trade secrets was for improper financial gain, has been willful and malicious, and entitles Novanta to an award of exemplary damages, royalties and attorneys' fees as permitted by California Civil Code §§ 3426.3 and 3426.4.

66.    Novanta has suffered irreparable harm as a result of the activities alleged in this Complaint and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Defendants, and all persons acting with them or on their behalf, are enjoined from engaging in any further such acts of unfair competition.

## THIRD CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets, 18 U.S.C. § 1831, *et seq*., Against All Defendants)**

67.     Novanta realleges and incorporates by reference paragraphs 1 through 48 and paragraphs 57-66 above.

68.     The facts alleged in this Complaint, and as further detailed in paragraphs 56-66 constitute actual and threatened misappropriation of Novanta's trade secrets by Defendants pursuant to 18 U.S.C. § 1831, *et seq.*

69.     Novanta is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate foreign commerce.

70.     Novanta's trade secrets consists of, among other things, the identification of particular customers; types of business and needs of customers; pricing information related to customer purchases of Novanta's products, and particularly comprehensive compilations of customer pricing historically and over the span of various industries; a compilation of recent customer quotes supplying details about how Novanta prices and packages its products and systems; customer-specific product pricing; historical purchasing trends and customer purchase and pricing details on a customer-by-customer basis; sales analytics for the Photo Research division; pricing strategies and formulas; inventory and warehousing strategies; non-public information about sales margins; non-public information about prospective customers and stage of sales information, including information about when customers would be in the market to purchase Spectrometers and related accessories and services; sales, revenue and operating forecasts; profit and loss details associated with the Photo Research division; manufacturing lead times; non-public design and manufacturing specifications related to Novanta's Spectrometers; and strategic business plans.

71.     The information identified above and in this Complaint has economic value because it is not generally known to Novanta's competitors or potential competitors, and it is not known in the industry.  Novanta has developed these trade secrets over time and through substantial expenditure of resources, and Novanta has obtained a competitive advantage from these trade secrets.

72.    Novanta has taken reasonable steps to maintain the secrecy of trade secrets by, among other things, requiring employees to execute agreements with a proprietary information provision; publishing and enforcing policies that prohibit the unauthorized copying, use or disclosure of Company trade secrets; enacting policies that limit the use of Company computers to business purposes and prohibiting employees from transferring confidential Company business records to home computers; only permitting access to sensitive Company information on a need to have basis; and limiting disclosure of Company information where an employee requires such information for purposes of carrying out his or her job duties.

73.    Thamotharan became aware of Novanta's trade secrets only by virtue of his employment with the Company.

74.    Defendants misappropriated Novanta's trade secrets by improper means, including taking the actions alleged in this Complaint.  Those actions include, among other things, acquiring Novanta's trade secrets by improper means, as well as disclosing and using Novanta's trade secrets without authorization as detailed in this Complaint.   Thamotharan undertook these wrongful actions, including on behalf of and for the benefit of Radiant, despite his express agreement to abide by a contract and code of conduct that prohibited him from using or disclosing Novanta's trade secret information during and after his employment with Novanta.  Thamotharan had a duty to maintain the secrecy of Novanta's trade secrets.  Novanta did not consent to Thamotharan's disclosure or Defendants' use of Novanta's trade secrets.  Novanta alleges on information and belief that Thamotharan, on behalf and to the benefit of Radiant, continues to disclose and use Novanta's trade secrets to unlawfully compete.

75.    On information and belief, Radiant has ratified the conduct of Thamotharan as detailed in this Complaint, including accepting the benefits of Thamotharan's use of Novanta's misappropriated trade secrets, and not taking adequate or prompt action to prevent the further use of Novanta's misappropriated trade secrets.

76.     By reason of Defendants' acts alleged herein, Novanta has and will suffer damages to its business and the loss of sales and profits the Company would have made but for Thamotharan's acts.  Furthermore, Novanta alleges on information and belief that Defendants have used Novanta's misappropriated trade secrets to unjustly enrich themselves, entitling Novanta to damages above and beyond Novanta's actual loss.

77.     Defendants' misappropriation of Novanta's trade secrets was for improper financial gain, has been willful and malicious, and entitles Novanta to an award of exemplary damages and attorneys' fees and costs.

78.     Novanta has suffered irreparable harm as a result of the activities alleged herein and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Defendants, and all persons acting with them or on their behalf, are enjoined from engaging in any further such acts of unfair competition.

## FOURTH CLAIM FOR RELIEF

**(Breach of Duty of Loyalty And Confidence, Against Thamotharan Only)**

79.     Novanta realleges and incorporates by reference paragraphs 1 through 48 above.

80.     As Novanta's Director of Global Sales for the Photo Research division, Thamotharan was one of the highest ranking employees of the division and he owed a duty of loyalty and a duty of confidence to Novanta.  Thamotharan was responsible for developing tactics for targeting customers, assessing customers' impending needs for various products, visiting customers' places of business as Novanta's representative, and overseeing another sales employee.  In his Director role and in his other leader roles at the Company, Thamotharan was given discretionary authority in a managerial capacity to help manage and grow the business of Novanta, and he had actual and meaningful input on Company policies, procedures, and strategies.  As a result, the employment relationship imposed fiduciary duties on Thamotharan, including the duty of loyalty and the duty of confidence.  Moreover, in the Proprietary Information

Agreement Thamotharan signed with Novanta on December 31, 2014, he acknowledged his duty of loyalty to Novanta.

81.     Thamotharan owed duties of loyalty and confidence to Novanta to affirmatively protect, preserve and enhance Novanta's interests and to refrain from doing anything that would injure Novanta, or that would deprive Novanta of profit or advantage that Thamotharan's skill and ability may bring to Novanta.  This duty is found in common law and is also codified in Labor Code sections 2856-2863.

82.     While still employed at Novanta, Thamotharan engaged in conduct, as alleged in this Complaint, designed to injure Novanta and to benefit himself and Radiant, at the expense of Novanta and in breach of his duties to the Company.  By engaging in the conduct alleged in this Complaint, Thamotharan did not act in Novanta's best interests, but acted with a view toward promoting his private interests at Novanta's expense and to its detriment.

83.     Thamotharan's breach of his duties of loyalty and confidence caused actual harm to Novanta and as a result of the foregoing breach of loyalty, Novanta has been damaged.

84.     Thamotharan's conduct as alleged herein was willful and malicious and performed with the intent to damage Novanta's business and to benefit himself at Novanta's expense.  Novanta is therefore entitled to an award of punitive damages according to proof at trial.

### FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage, against all Defendants)**

85.     Novanta hereby incorporates by reference paragraphs 1 through 48 above

86.     Novanta maintained economic relationships with its existing customers and a potential relationship with its prospective customers, all with the probability of future economic benefit to Novanta based upon the likelihood of Novanta's continued business with such customers.

87.     Novanta is informed and believes, and on that basis alleges, that Defendants had actual knowledge of Novanta's relationships with its current and prospective customers and Novanta's future stream of business from such customers. Indeed, as the Global Director of Sales for the Photo Research division, Thamotharan was intimately familiar with Novanta's customer relationships and he retained that knowledge as a senior level executive of Radiant.

88.     Novanta is informed and believes, and on that basis alleges, that Defendants knew of and intended to and did disrupt Novanta's economic relationship with its customers and prospective customers.

89.     Novanta is informed and believes, and on that basis alleges, that Defendants engaged in independently wrongful acts described in detail in this complaint.  Those independently wrongful acts include Thamotharan, on behalf of and for the benefit of Radiant, breaching his duty of loyalty, diverting corporate opportunities in while still employed at Novanta, and breaching the duty of confidence as detailed in this Complaint and more particularly alleged in paragraphs 79-83, above. Furthermore, Novanta is informed and believes that Defendants engaged in independently wrongful conduct by taking and then using the Company's confidential and proprietary information, such as particularized marketing proposals that were custom made for customers, individual customer quotes, competitive analysis, inventory capacity information, and customer contact data and details to facilitate the diversion of business to Radiant.

90.     The economic relationships Novanta has with some of its customers and prospective customers have already been or soon will be disrupted by Defendants' interference, and such interference has caused economic harm to Novanta.  Novanta is informed and believes that Defendants continue to engage in wrongful conduct aimed at disrupting these relationships.

91.     Novanta is informed and believes, and on that basis alleges, that Radiant knew of the arrangements that Novanta had with Thamotharan, but nevertheless

1  encouraged Thamotharan to breach his duties to Novanta and further encouraged

2  Thamotharan to take and use Novanta's confidential and proprietary information.

3  Novanta is additionally informed and believes that Radiant has ratified Thamotharan's

4  wrongful conduct, including by accepting the benefits of his wrongful conduct and the

5  new business he has generated from that wrongful conduct.

6       92.    Novanta is informed and believes, and on that basis alleges, that as a

7  direct result of Defendants' wrongful conduct, Novanta has been seriously damaged,

8  and will continue to be damaged, in an amount that is not now presently ascertainable,

9  but will be established at trial.

10       93.    By reason of the above-alleged acts and conduct of Defendants, Novanta

11  has suffered damage, and it will continue to suffer great and irreparable harm and

12  damage.  This irreparable harm will be difficult to ascertain, and Novanta will be

13  without an adequate remedy at law.  Novanta therefore is entitled to a restraining order

14  and a permanent injunction.

15       94.    Novanta is informed and believes, and on that basis alleges, that

16  Defendants' conduct alleged herein was intentional, oppressive, fraudulent, malicious,

17  and despicable and was engaged in for financial gain at the expense of Novanta and to

18  harm Novanta.  Thus, Novanta is entitled to an award of punitive damages in an

19  amount sufficient to punish Defendants and to deter such conduct in the future

20  **<u>SIXTH CLAIM FOR RELIEF</u>**

21  **(Intentional Interference with Contractual Relationship, Against Radiant Only)**

22       95.    Novanta hereby incorporates by reference paragraphs 1 through 48 above.

23       96.    Thamotharan and Novanta entered into valid and binding contracts,

24  including the Proprietary Information Agreement referred to in this Complaint.  The

25  agreement between Thomatharan and Novanta prohibited Thomatharan from, among

26  other things, taking, retaining, using or disclosing any of Novanta's confidential or

27  proprietary information.  The agreement also prohibited Thomatharan from breaching

28  any duty of loyalty or confidentiality.

97.     Novanta is informed and believes, and on that basis alleges, that Radiant had knowledge of Thamotharan's contractual agreement with Novanta.

98.     Novanta is informed and believes, and on that basis alleges, that Radiant committed intentional acts to induce Thamotharan to breach or disrupt his contractual relationship with Novanta as alleged in this Complaint.

99.     Radiant's wrongful conduct has seriously damaged and continues to damage Novanta in an amount that is not now presently ascertainable, and will be established at trial.

100.    Novanta is informed and believes, and on that basis alleges, that Radiant's conduct was intentional, oppressive, fraudulent, malicious, and despicable and was engaged in for financial gain at the expense of Novanta and to harm Novanta.  Thus, Novanta is entitled to an award of punitive damages in an amount sufficient to punish Radiant and to deter such conduct in the future

## SEVENTH CLAIM FOR RELIEF

**(Unfair Competition – California Business and Professions Code §§ 17200, *et seq*., Against All Defendants)**

101.    Novanta hereby incorporates by reference paragraphs 1 through 48 and above 79-100 above.

102.    By the acts alleged in the paragraphs incorporated by the reference above, Defendants have committed business acts and practices that are unlawful and unfair in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-09.

103.    Defendants' acts and practices are unfair and violate the UCL because Defendants' acts impair fair and honest competition and otherwise significantly harm competition in the market for Novanta's products.

104.    Novanta will be denied an effective and complete remedy absent the relief requested herein.

105.   Novanta has suffered irreparable harm as a result of the activities alleged herein and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Defendants, and all persons acting with them or on their behalf, are enjoined from engaging in any further such acts of unfair competition.

## EIGHTH CLAIM FOR RELIEF

### (Conversion, against all Defendants)

106.   Novanta hereby incorporates by reference paragraphs 1 through 48 above.

107.   Novanta owned all of the confidential and proprietary information at issue in this Complaint.  The Company had a property interest in such material.

108.   Defendants intentionally and substantially interfered with Novanta's property rights, including the right to have sole and exclusive possession of its confidential and proprietary information, by wrongfully acquiring the information described as confidential and proprietary in this Complaint, and refusing to return such information.

109.   Novanta did not authorize Defendants to interfere with or retain Novanta's confidential and proprietary information.

110.   Novanta is informed and believes, and on that basis alleges, that as a direct result of Defendants' wrongful conduct, Novanta has been seriously damaged, and will continue to be damaged, in an amount that is not now presently ascertainable and will be established at trial.

## PRAYER FOR RELIEF

Novanta prays for judgment against Thamotharan as follows:

1.   Actual damages according to proof;

2.   Punitive and exemplary damages according to proof;

3.   An order of restitution and reasonable royalties;

4.   An order requiring Defendants, their agents, employees, and all persons acting in concert with them, to refrain from using, copying, publishing, disclosing, transferring, or selling, and to return to Novanta any and all trade secrets and other

confidential and proprietary materials, including, and any and all materials created, incorporating, or referencing Novanta's trade secrets or its other confidential or proprietary information;

5.      During the pendency of this action, an injunction enjoining and restraining Defendants, as well as their agents and/or employees, from destroying, manipulating, or otherwise altering any evidence, including evidence that may reside on (or be embodied by changes to) any computer system, network, or other electronic means of data storage or transfer, relating in any way to the matters alleged in this Complaint;

6.      During the pendency of this action, an order enjoining and restraining Defendants, as well as their agents and/or employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Novanta's trade secrets and its other confidential and proprietary information, and from obtaining commercial advantage or unjust enrichment from their theft of such information;

7.      Reasonable attorneys' fees and costs; and

8.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Novanta demands a trial by jury on all issues triable by jury.

Dated:  March 12, 2018.                JONES DAY


                                       By: /s/ Steven M. Zadravecz

                                          Steven M. Zadravecz
                                          Attorneys for Plaintiffs NOVANTA
                                          CORPORATION

NAI-1503505652v1

31